requested, has expended the financial resources required to remain in business or to compete successfully in resisting or overcoming the Defendants' conspiracy. The conspiracy intends to deplete the resources of Mr. Mirch in order to cause fraudulent business affairs to continue within the state of Nevada.

278. Defendants have delayed the ultimate granting of due process rights, privileges, and review so as to damage severely Kevin J. Mirch's ability to compete or remain in business. By delaying the procedures required in their own bylaws, Kevin J. Mirch's administrative procedures have been ongoing for over 2 years. State Bar Rules require matters to be resolved in 45 days. As a result he has lost a substantial amount of his business and caused severe medical problems to persist for prolonged periods of time.

279. The effect of the combination and conspiracy has been and will be, among other things, to prevent and restrain competition in the furnishing of business litigation focussing on fraudulent manufacture of gaming equipment, software, and the theft of money from businesses by bank and other entities.

280. As a direct and proximate result of the aforesaid combination and conspiracy, Kevin J. Mirch has expended considerable sums of money which he would not otherwise have been required to spend due to the necessity of overcoming the illegal attempts by the Defendants to deny Kevin J. Mirch and Mirch & Mirch their right to a substantial number of clients their constitutional rights.

281. As a result of the combination and conspiracy to restrain trade and competition by the Defendants, Kevin J. Mirch has been caused to suffer and will continue to suffer substantial damages to his reputation and practice, all to his detriment.

282. The Defendants concerted efforts to eliminate Kevin J. Mirch and Mirch & Mirch as a competitor constitutes a group boycott in violation of Section 1 of the Sherman Act. By eliminating Kevin J. Mirch and Mirch & Mirch as a competitor, the

boycott successfully reduced competition for the Defendants' and other compliant attorneys.

283. Kevin J. Mirch is unable at this time to state finally the amount of damages sustained to date and those to be sustained in the future by reason of the illegal acts of Defendants as set forth herein. Kevin J. Mirch would show that, but for the illegal combination and conspiracy of the Defendants as alleged herein, as of the date of the filing of this lawsuit, he has suffered damages in an amount in excess of $75,000,000. Kevin J. Mirch is further entitled to three times the damages determined to have been sustained, simple interest on actual damages as allowed by law, costs of suit and attorney's fees for the trial or hearing in this Court, an additional amount in the event an appeal is taken to the Court of Appeals, and an additional amount for an appeal to the United States Supreme Court and a cost of retraining for Kevin J. Mirch on those procedures he has been denied since his constructive termination from the State Bar of Nevada.

284. The Defendants conspired with one another to monopolize or attempt to monopolize the legal business in violation of 15 U.S.C.A. §1 and 2. The Defendants have conspired to restrain competition and inhibit trade, including denial of competitive advantages or opportunities, in violation of 15 U.S.C. §15 and §26.

285. The Defendants conspired with one another to perform false and malicious peer review against Kevin J. Mirch in order to cause the loss of his privileges to practice law. They did so by using and performing reviews by persons who were unqualified and/or who were biased competitors and who were motivated by anti-competitive intent.

286. These Defendants have published false and inaccurate written reviews, biased testimony, and false reports, in many cases contrary to well-established legal principles including violation of rules, regulations, and policies, for the purpose of harming Kevin J. Mirch, Mirch & Mirch all in an effort to pursue their

42

anti-competition goal of causing the loss of privileges and goal of causing each attorney to become an "compliant individual fearful of protecting his or her clients constitutional rights".

287. Defendants have knowingly, willingly, and maliciously sought to destroy Kevin J. Mirch's, and Mirch & Mirch's reputation and legal practice in order to inhibit or restrain competition from Kevin J. Mirch, and Mirch & Mirch. This is a pattern of conduct which can be established by the testimony of other lawyers and competitors. Such conduct requires an award of exemplary damages, treble damages and attorneys fees against the defendants, in order to discourage such conduct in the future.

288. Plaintiff has suffered damages in excess of $75,000, the exact amount of which will be determined at the time of trial.

289. Plaintiff has been required to retain counsel and as a such is entitled to reasonable attorney fees and costs.

290. Kevin J. Mirch is entitled to recover threefold the damages he sustained, and the cost of suit, including attorneys fees, pursuant to Section 4 of the Clayton Act. 15 U.S.C. §15 (1988). In addition pursuant to Section 16, Kevin J. Mirch seeks declaratory and injunctive relief as prayed for herein. IS U.S.C. §26(1988).

## SECOND CLAIM FOR RELIEF
## (CONSTITUTIONAL VIOLATION DUE PROCESS)

291. Plaintiff incorporates by all the previous paragraphs as if more fully set forth herein.

292. Defendants intentionally and improperly failed to provide due process to Kevin J. Mirch, Esq., in Disciplinary matters before the Nevada State Bar Association for the last 15 years. This was done to protect illegal conduct by "preferred attorneys" and their clients. The illegal conduct included, but is not limited to falsifying transcripts, altering files, losing Court files, threatening attorneys if they pursued actions against "preferred attorneys or clients such as IGT". This conduct constituted

obstruction of justice in violation of the Civil Rights of Mr. Mirch and his clients.

293. Defendants intentionally failed to follow their own bylaws, rules, regulations and precedent established in Nevada and regarding the discipline of an attorney who is disclosing illegal conduct by other individuals.

294. Plaintiff, Kevin J. Mirch, Esq., has been licensed for over 20 years. During that period of time he has represented cases which had a direct impact upon the well being of the general public.

295. Plaintiff, Kevin J. Mirch, Esq., as a licensed attorney has a property right subject to review under Nevada and California Law.

296. Plaintiff, Kevin J. Mirch, Esq., has a right under the Fifth and Fourteenth Amendments of the United States Constitution, the California Constitution, and the Nevada Constitution.

297. Procedures have been established by the State Bar of Nevada for the discipline of attorneys. The rules and regulations are subject to equal protection under the United States and Nevada Constitutions.

298. Over the last 20 years, the State of Nevada - Northern Nevada Disciplinary Panel has failed to follow procedure necessary to assure that Mr. Mirch is not denied due process.

299. The following conduct has violated Mr. Mirch's due process rights on a continuous basis:

    a. Mr. Mirch has repeatedly been the subject of attacks by the State Bar Association whenever a case was pending or close to trial (i.e., IGT v. Nevada Gaming Ng, Inc.

    b. Mr. Mirch was denied an immediate hearing on matters that he was accused of in order to wait for an opportune time to prosecute him.

    c. Mr. Mirch was denied a hearing for nearly 2 years, and after Rob Bare represented that Judge Hardesty had erred in his opinion which prompted

44

this disciplinary action.

d. Mr. Mirch was entitled to a hearing with 30 days, but instead has had to worry about practicing law with the possibility of have his license taken away.

e. Mr. Mirch was entitled to a fair hearing pursuant to the established rules and regulations. Instead, new rules were established which denied Mr. Mirch the right to peremptory rights of judges hearing his case.

f. Mr. Mirch had a right to an unbiased review, both at the ad hoc and hearing stage. This included a diligent review of the committee which was not biased. A Biased committee is one that does not include competitors or individuals who have an interest in any litigation involving Mr. Mirch.

g. Mr. Christensen, Esq., who works for Reno City Attorney's office and had a conflict of interest which prevented his involvement in this case.

h. Mr. Christensen was involved in the acceptance of contractors fees for homes in the amount of $1,000.00 per property. Mr. Mirch was involved in a dispute that requested an accounting of the $1,000.00. Because that money could not be found, a bond was issued which paid for the missing funds. Mr. Christensen has a conflict since he is involved in the missing funds which caused a bond offering to be voted upon and eventually caused that money to be used to pay for the missing monies.

i. Currently, before the Reno City Attorney's Office is a claim wherein Mr. Mirch represents Mr. Oberg in a dispute over an expansion at a Home Depot, that had previously been resolved, but the Defendants have changed the terms by selling parts of the property without proper notice regarding the same. Mr. Christensen's involvement in that matter makes his involvement in the Mirch Disciplinary matter biased. Mr.

45

Christensen recognized this issue by writing a letter questioning the discrepancy. Despite acknowledging the bias, Defendants have refused to remove competitors, previously used attorneys in an adversarial matter.

j. Mr. Mirch has been involved in public fraud which includes a number of attorneys who work in an adversarial relationship with Mr. Mirch. For example, Mr. Mirch sued Washoe County for millions of dollars in missing money. Mr. Mirch's office was bombed. Washoe County refused to pursue the admitted wrongdoer. As such, attorneys currently working for the City Attorneys Office, the District Attorney's Office, or the State of Nevada Attorney General's Office, each must be excluded. Each of these entities have direct conflicts with Mr. Mirch. The conflict exists because Mr. Mirch has openly disclosed illegal conduct involving each of these entities. Despite these lawsuits, no steps were taken to avoid bias.

300. Mr. Mirch's statute of limitations has run on Judge Hardesty's order.

301. The State Bar had 2 years to bring a disciplinary action. Instead, Mr. Bare admitted that Judge Hardesty was incorrect after reviewing Mr. Mirch's counsel's response. Mr. Bare agreed not to pursue discipline after reviewing Mr. Hamilton's response.

302. Following the Wild Game Ng, Inc., v. Acres, Inc., verdict, and while knowing that a second claim existed and was set for trial in January of 2006, in order to protect, IGT and its counsel, a hearing was set in order to prevent Mr. Mirch from properly preparing for trial and in order to spread rumors that Mr. Mirch was going to be disbarred.

303. Mr. Mirch was specifically told that a decision to discipline him had already been made. This rumor has been spread without reprieve and in an effort to

46

impact Mr. Mirch's representation of Wild Gaming Ng before the January trial.

304. Mr. Mirch has been denied discovery including a transcript in which Judge Kosach admitted making derogatory comments regarding Mr. Mirch and one of his clients. The conversation by Judge Kosach involved derogatory comments designed to cause Mr. Mirch direct and immediate harm. The conversation is transcribed, but Judge Kosach has refused to provide the same. The transcript proves that Mr. Mirch was the subject of unfair treatment for the last 15-20 years from various sources.

305. Judge Hardesty was biased and had made statements to attorneys to sue Mr. Mirch. This was done as Judge Hardesty was jealous that he had not passed the CPA test, but early in his career had regularly represented that he was a CPA. Judge Hardesty did this to create a practice. While Mr. Mirch was denied the right to state he was a CPA, Judge Hardesty could make such a statement even though it was not true.

306. Judge Hardesty improperly moved the case from Judge Adams to himself because he was running for Supreme Court and sought support from McDonald Carano.

307. While Mr. Mirch was involved in 2 cases before Judge Hardesty (previously Judge Adams), Mirch v. Frank (state case), and Mirch v. McDonald Carano, he accepted cash funds and attended "like kind" meetings which substantial assets were paid to Judge Hardesty.

308. While presiding in the Mirch v. McDonald and Mirch v. Frank cases, Judge Hardesty did not disclose that he was receiving funds from attorneys that had a direct, known, and absolute conflict of interest against Mr. Mirch. The following individuals made cash contributions or like kind ones without Mr. Mirch knowing that Judge Hardesty was receiving money and like kind funds.

309. Judge Hardesty's Campaign Contributions Report exposes the following:

    1.    September 27, 2004 McDonald Carano Wilson contributed $2500;

  2. March 11, 2004 - John Frankovich (partner of McDonald Carano) $1000

  3. May 10, 2004 Laxalt & Nomura, counsel for Defendants $1000;

  4. May 10, 2004 McDonald Carano Wilson $1090;

  5. McDonald Carano Wilson June 10, 2004 $1500;

  6. March 11, 2004 Defendant Pat Lundvall hosted a dinner for a fundraiser for Judge Hardesty.

310. These contributions were accepted and not revealed to Mr. Mirch as the opposing party was still very much active before Judge Hardesty.

311. On March 9, 2004, days within contributions from Mr. Frankovich, McDonald Carano, Laxalt and Nomura and a dinner at Ms. Lundvall's house, Judge Hardesty entered an Order Denying Plaintiff's Motion for Reconsideration, as well as an order re: sanctions.

312. Canon 4 permits a judge from accepting a gift or donation only if the donor is not a party or any other person who has come or likely to some or whose interests have come or are likely to come before the judge". Canon 4(D)(5)(h).

313. Canon 5(a)((3) provides that a candidate for judicial office (a)" shall maintain the dignity appropriate to judicial office and act in a manner consistent with the integrity and independence of the judiciary...". Judge Hardesty had a duty to disclose that he was meeting with opposing counsel and receiving money from opposing counsel.

314. Judge Hardesty should have disclosed the contributions by the Defendants and their attorneys to the Plaintiff.

315. Judge Hardesty apparently attended a fund raiser at the Defendant Pat Lundvall's home just two days after ruling on Plaintiff's Motion to Reconsider and entering and order re: sanctions in the case of Mirch v. McDonald.

316. Because Judge Hardesty took the cases from Judge Adams and changed

48

the motion to dismiss to one for summary judgment, his conduct created the appearance of impropriety sufficient to show a violation of Mr. Mirch's Due Process.

317. This conduct at least gives the impression of impropriety violation of Mr. Mirch's right to due process and a fair, unbiased forum.

318. The procedures were not followed in the proposed hearing set for disciplinary action against Mr. Mirch.

319. Mr. Mirch has not been given sufficient time to respond to Mr. Kennedy as he has not been made available.

320. Defendants have failed to follow the procedures normally set for a hearing.

321. Instead of following the procedures established for a hearing, it is necessary to provide proper notice of a hearing and a time to prepare.

322. Upon information and belief, Mr. Bare has secretly provided information to the Panel assembled without the permission of Mr. Mirch. The documents are secretly provided so that Mr. Mirch is unable to cross examine the evidence.

323. The time to file a hearing before Mr. Mirch has run well before the 2 years has lapsed.

324. 2 years lapsed because Mr. Bare agreed with Mr. Hamilton that Judge Hardesty's Order lacked merit.

325. Mr. Kennedy was hired by the State of Nevada Bar - Northern Nevada Disciplinary.

326. Mr. Kennedy agreed with the order entered by Judge Hardesty without requesting any evidence from Mr. Mirch.

327. Mr. Kennedy works for Lionel Sawyer Collins as a partner.

328. Lionel Sawyer Collins is adversary counsel for IGT in Wild Game NG v. IGT.

329. The Nevada State Bar Association- Northern Nevada Panel has taken a

position in favor of IGT at the expense of Mr. Mirch and only to avoid trial in January against IGT.

330. Defendants had a duty to provide to Mr. Mirch a separate notice of the accusations and a reasonable opportunity to respond to them.

331. Mr. Mirch was not provided with proper notice of specific violations resulting in the loss of his privileges. Only general statements agreeing with Judge Hardesty have been provided.

332. In fact, Defendants charges were fabricated after the initial administrative proceedings were initiated.

333. Defendants have an obligation to provide a notice of the individuals present, transcript of the meeting, and initiated without the Defendants following the procedures established in the rules, regulations, statutes, supreme court rules, and applicable precedent.

334. In Mr. Mirch's case the initial charges were invalid as Defendants attached a short statement to Judge Hardesty's order which was never tested by proper discovery, motion to dismiss, and motion for summary judgment.

335. The specific legal harm was not disclosed to Plaintiff as required under California, Nevada and United States constitution. Accordingly, Plaintiff did not have proper notice of all of the charges made again him. As a result, Mr. Mirch has not been allowed to defend against these charges. Since proper notification was not given, Mr. Mirch was not give a reasonable opportunity to prepare for the fabricated charges. Mr. Mirch literally faces new charges on a daily basis without notice and is required to defend immediately without a due process opportunity to respond.

336. Mr. Mirch is being disciplined for two reasons, to prevent him from representing clients who are pursuing viable claims against entities represented by preferred lawyers, and to protect the Casinos that falsify markers and IGT which will be required initiate a world wide recall since its boards, CVT's, SAS language as it

50

applies to Mega Bucks are so defective that IGT's customers will refuse to continue to gamble in the state of Nevada.

337. The State Bar of Nevada - Northern Disciplinary Panel manipulated the composition of the ad hoc committee which determined whether a hearing was proper.

338. Mr. Mirch was not provided the name of the members of the State of Nevada- Northern Nevada Disciplinary Panel in order to create an adverse panel that would not fear retribution for their acts to protect these Defendants.

339. The initial members were not qualified to make a decision as to whether Mr. Mirch should be disciplined as the State Bar failed to seek any evidence supporting Mr. Mirch's position, refused to provide Judge Kosach's transcript which admits that he is acting improperly and adverse to the interests of Mr. Mirch and his clients.

340. Each of the members that made a decision to hold a hearing against Mr. Mirch had a conflict of interest as economic competitors, protectors of IGT or related entities, and attorneys.

341. Jones & Vargas, by and through Anne Morgan, Mr. Beesley's Husband, worked for Wild Game Ng and IGT at the same time without disclosing the same. The State Bar of Nevada is aware of this conflict and refuses to take appropriate action for such a conflict.

342. Sarah Beth Brown was represented by Bruce Laxalt who provided false information to Judge Hardesty, regarding Mr. Mirch's conduct.

343. Bruce Laxalt, Pat Lundvall, Ms. Goedert are all aware that the contract for services that Dr. Frank claimed he never signed nor knew about was in the possession of a private investigator retained by McDonald Carano.

344. Since no investigation was done by the Nevada State Bar, that document remains in the possession of their investigator or his wife or friend.

345. Aside from the above due process violations, the Nevada State Bar

51

Association-Northern Nevada Panel also violated Mr. Mirch's due process rights by the following conduct:

1. Failure to provide the notice of any date of any violation of any ethical rules.
2. The specific act or omission of alleged substandard ethical conduct by Mr. Mirch.
3. The resulting negative impact on occurring as a result of the alleged ethical violation by Mr. Mirch.
4. The objective standard of ethical care applicable under the care of this case.
5. The Defendants violated Plaintiff's due process by not allowing Mr. Mirch an opportunity to be heard and present evidence prior to the hearing. Specifically, secret meetings occurred between the initial ad hoc committee to determine whether a hearing was proper.

346. The Defendants violated California and Nevada statutes for fair hearings. The provisions include the right to an unbiased trier of fact and hearing officer; access to all the documentary evidence to be presented at the hearing; the right to have a record of the hearing; and the right to call, examine, and cross-examine witnesses.

347. As a result, Mr. Mirch seeks to recover his actual damages as proven at trial, together with his reasonable and necessary attorneys' fees, court costs, and interest as allowed by law.

348. Mr. Mirch is entitled to punitive damages for the malicious conduct perpetuated by the Defendants in order to protect IGT, its attorneys participating in the Disciplinary hearing for over 2years, and having a hearing only to prevent a world wide recall of all of IGT's equipment and certain casino's markers.

WHEREFORE, Plaintiff prays for relief as set forth below.

## THIRD CLAIM FOR RELIEF
## (BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING)

349. Plaintiff incorporates by reference all the previous paragraphs as if more fully set forth herein.

350. The parties had a special relationship that required reliance upon the representations and conduct of each other. The reliance which eventually lead to performance by the Plaintiff was as a result of that same relationship and was reasonable. Mr. Mirch relied upon the State of Nevada Bar-Northern Nevada Disciplinary Panel.

351. Mr. Bare has a duty to the Association and its members to investigate and determine when attorneys are using the State Bar as a litigation tool to protect clients which should not be allowed to do business.

352. As described above, Defendants intentionally breached the covenant of good faith and fair dealing with Plaintiff by making both incorrect and intentionally false disclosures to the State of Nevada Northern Nevada Disciplinary Panel. The false statements were made by Bruce Laxalt. The false statements included that Ms. Pat Lundvall and Ms. Goedert had did not know the location of the Brooks/USI assets in 1995.

353. In 1995 Ms. Lundvall knew that Mr. Savage had located the assets as of 1995, concealed the location until it was safe to provide the same to the public without the Santa Barbara Bankruptcy court knowing that the same were supposed to be provided to the Court.

354. During 2002, McDonald Carano employees knew that Mr. Savage had located the assets in 1995, concealed their location from Mr. Mirch; and received those payments to date without paying Mr. Mirch.

355. Upon information and belief, Mr. Savage knew the location of the assets and withheld the same from Mr. Mirch and the Santa Barbara Bankruptcy Court's un-

53

appealed order.

356. Specifically, the Defendants breached the covenant of good faith and fair dealing in the following manner:

   a. Illegally concealing the location of the Brooks/USI assets from Mr. Mirch.

   b. Mr. Laxalt provided a false motion to Judge Hardesty to the affect that McDonald Carano did not know where the Brooks/USI assets were located as of 1995.

   c. Mr. Laxalt misrepresented the allegations claiming that Mr. Mirch had alleged that Ms. Goedert was involved in the Frank Bankruptcy Fraud while she was in law school. The allegation was meant and did state that McDonald Carano knew where the Brooks/USI assets were located when she became involved in the case.

   d. Mr. Laxalt concealed the fact that Mr. Laxalt knew where the Mirch/Frank contracts had been located and withheld that information in order to obtain funds some of which eventually were provided to Judge Hardesty for his political complaint. In 1995 Mr. Laxalt knew where the Brooks/USI assets were located.

   e. Upon information and belief, Mr. Savage obtained at least one of the Mirch Frank contracts.

357. The breaches of the covenant of good faith and fair dealing are material and intentional.

358. Plaintiffs have requested that the breaches be cured on several occasions.

359. Defendants have refused without excuse to cure the breaches even though notified of the same.

360. Defendants have intentionally violated the implied covenant of good faith

54

and fair dealing in order to cause Mr. Mirch and Mirch & Mirch severe harm (destruction of his law practice and financial where with all).

361. As a direct and proximate result of the breach of the implied covenant of good faith and fair dealing of Defendants, Plaintiffs has been, and will be in the future, prevented from earning maximum profits from the operation of its business. The exact amount of the lost profits and loss of future earnings is thus far undetermined and accordingly, will be proven at the time of trial.

362. Plaintiffs have retained an attorney to prosecute this action and as a consequence are entitled to reasonable attorney fees and costs related thereto.

363. As a result of Defendants breach of the implied covenant of good faith and fair dealing, Plaintiffs have been damaged substantially in excess of $75,000.

364. In breaching the covenant of good faith and fair dealing, Defendants acted with malice and exhibited a reckless disregard for the rights of the Plaintiffs. Therefore, Plaintiffs are entitled to punitive damages in an amount to be determined at the time of trial.

WHEREFORE, Plaintiff prays for relief as set forth below.

## FOURTH CLAIM FOR RELIEF
### (TORTUOUS INTERFERENCE WITH BUSINESS)
### (All Defendants)

365. Plaintiff incorporates by reference all the previous paragraphs as if more fully set forth below.

366. Through the actions of the Defendants described herein and the publication of Mr. Mirch's conduct to members of the legal community including but not limited to Judge Munnell, as described herein, the Defendants have tortuously interfered with Kevin J. Mirch, Esq.'s, business, particularly his relationship with his clients.

367. Dr. Munnell was told by Pat Lundvall, Esq., that Mr. Mirch was going to

be disbarred prior to the time that Judge Hardesty had made his ruling. Judge Munnell made the Statements in 2001 and has continued to do so until the present. Judge Munnell learned that information from the McDonald firm, and Pat Lundvall.

368. Defendants, intended to interfere with Plaintiffs contracts with a number of clients including Tom O'Brien and Jack Ferguson. Judge Munnell knew that O'Brien and Ferguson were Mr. Mirch's clients.

369. As a result of Dr. Munnell's statements, Mr. Mirch lost legal work from Mr. O'Brien's clients and had to share at least one case with another clients.

370. The acts, statements, determinations, and recommendations made and acts reported by the Defendants as described herein, were undertaken with malice and with the intention of preventing the contractual relationships between Mr. Mirch and his clients. These actions were undertaken for the purpose of harming Mr. Mirch and inhibiting competition. Defendants did not and do not possess a privilege, legal justification or excuse which would have condoned such actions. Mr. Mirch's business would not have been lost and Mr. Mirch would have obtained substantially greater business, in the absence of Defendants' interference.

371. As a direct result of Defendants' interference with Mr. Mirch's business, Mr. Mirch suffered and will continue to suffer actual damages including damages for lost profits, loss of past and future earnings and/or earning capacity in an amount in excess of $1,000,000 dollars. In addition, Mr. Mirch has suffered damages for past and future mental anguish and emotional distress, all to his damage and detriment in the amount of at least $1,000,000 dollars. Further, for the reasons more fully set forth above, Pat Lundvall and Bruce Laxalt intentionally published a number of false statements to Mr. Munnell who republished to other the fact that Mr. Mirch was being disbarred.

372. As a result of the malicious conduct by Laxalt and Lundvall, Plaintiff has suffered punitive damages which cannot be repaired. Accordingly, Plaintiff is entitled

to punitive damages.

373. Defendants were aware of these contractual relationships at the time that they interfered with the same.

374. Defendants conduct substantially interfered with Plaintiffs ongoing business and was intentional.

375. As a direct and proximate result of the intentional interference with actual contractual relationships Defendants, Plaintiff has been, and will be in the future, prevented from earning maximum profits from the operation of his medical practice. The exact amount of the lost profits and loss of future earnings is thus far undetermined and accordingly, will be proven at the time of trial.

376. As a result of Defendants improper conduct, Plaintiff has been damaged substantially in excess of $75,000.

377. Plaintiff retained an attorney in order to prosecute this action and accordingly, is entitled to reasonable attorney fees and costs related thereto.

378. In committing the acts herein mentioned, Defendants acted arbitrarily, capriciously, maliciously and with reckless disregard for Plaintiff. Consequently, Plaintiff is entitled to punitive damages in an amount to be determined at the time of trial.

WHEREFORE, Plaintiff prays for relief as set forth below:

## FIFTH CLAIM FOR RELIEF
## INJUNCTIVE RELIEF
## (STATE BAR OF NEVADA AND ROB BARE)

379. Plaintiff incorporates by reference all the previous paragraphs of this complaint as if more fully set forth herein.

380. The State Bar of Nevada- Northern Nevada Disciplinary Panel has made a decision to hear whether Mr. Mirch should be disciplined for bringing an action against McDonald Carano for threatening Mr. Mirch that if he disclosed to the Santa

Barbara Bankruptcy Court or the Bankruptcy Judge that over $4,000,000.00 had been recovered, that she would make sure that Mr. Mirch would be suspended or disbarred from the practice of law.

381. Mr. Mirch made the disclosure to an agency regulating bankruptcy fraud.

382. After making that disclosure, Defendants initiated an action, motion to dismiss against Mr. Mirch.

383. Mr. Mirch made the disclosure in accordance with an order entered by a bankruptcy judge that was not appealed.

384. Judge Hardesty took over the case as the presiding judge from Judge Adams 2 or 3 days prior to the hearing set by Judge Adams on the motion to dismiss.

385. Without prior notice, Judge Hardesty changed the motion from one to dismiss to one for Summary Judgment.

386. Mr. Mirch was not allowed discovery or the opportunity to argue a summary judgment motion at the time.

387. Judge Hardesty entered an order which harshly attacked Mr. Mirch and referred the case to the State Bar of Nevada.

388. The State Bar of Nevada through its counsel refused to consider the matter for approximately 2 years until Mr. Mirch was getting ready to litigate a highly contentious matter against IGT.

389. The IGT matter involved manufacturing fraud, including but not limited to altering serial numbers in order to hide defective CVT's.

390. As a result of the poor order Mr. Mirch was never allowed to have his case properly argued after discovery.

391. At the time that Judge Hardesty issues the order against Mr. Mirch, he was regularly meeting with counsel for IGT and others that Mr. Mirch had successfully won cases.

392. If Mr. Mirch were allowed to have his matter heard, it would have been

1 discovered that Judge Hardesty was wrong.

393. McDonald Carano had found the assets which were the subject matter of the underlying claim from Mr. Savage, their investigator in 1995.

394. In order to obtain a substantial amount of that money, Ms. Lundvall caused Mr. Savage to keep the location of the underlying assets private and blame Mr. Mirch for lying.

395. If the hearing is allowed to continue without any discovery being allowed Mr. Mirch's legal career could be substantially impacted.

396. This would cause irreparable harm to Mr. Mirch.

397. Mr. Mirch's legal career is a unique assets.

398. Any hearing should be foregone until Mr. Mirch is allowed to litigate the IGT v. Wild Gaming Ng. If the proceeding is allowed, and Mr. Mirch is unsuccessful, the impact may cause 500 employees to lose their jobs.

399. As irreparable harm may occur without an injunction preventing the hearing, Mr. Mirch requests that this hearing be prevented until proper discovery and the Nevada Supreme court can hear this matter.

400. The State Bar of Nevada has waited 2 years to bring this issue to a hearing and its counsel has stated that Judge Hardesty's order is incorrect, but designed to cause Mr. Mirch as a vendetta that started several years ago.

## PRAYER FOR RELIEF.

Plaintiff prays for relief as is set forth below:

1. Damages the exact amount of which will be determined at the time of trial.
2. Punitive damages for the malicious contract caused by the Defendants.
3. For such other and further relief as the Court may deem appropriate.
4. For injunctive relief which prevents any disciplinary action from occurring until Plaintiff has had an opportunity to receive discovery, including, but not limited to the deposition of Mr. Kennedy and each of the parties in this case.

Respectfully submitted this 19th day of November 2005.

Mirch & Mirch

_____
Kevin J. Mirch, in pro per