KEVIN J. MIRCH, ESQ.
NV Bar No. 000923
320 Flint Street
Reno, Nevada  89501
(775) 324-7444

Plaintiff in Pro Per

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

KEVIN J. MIRCH, ESQ.

    Plaintiff,

v.

BRUCE BEESLEY, ROB BARE,
BRIDGET ROBB PECK,
DONALD CHRISTENSEN, STATE BAR
OF NEVADA, DOES I -X
A-Z Corporations,

    Defendant.
_____/

Case No. 3:05-CV-641-RLH-RAM

**OPPOSITION TO MOTION FOR SANCTIONS (Fed.R.Civ.P.11)**

COMES NOW, Plaintiff, KEVIN MIRCH, ESQ., in pro per and opposes Defendants' Motion for Sanctions.  This Opposition is based on the following memorandum of pints and authorities, exhibits, affidavits and pleadings on file herein.

DATED this ___ day of August, 2006.

                                                             KEVIN MIRCH

                                                       By:_____/s/_____
                                                           KEVIN  MIRCH, ESQ.
                                                           SBN Nev.: 923
                                                           320 Flint Street
                                                           Reno, NV 89501
                                                          (775) 324-7444
                                                           Plaintiff

# POINTS AND AUTHORITIES
# FACTS

**a.     Introduction**

     This action arises from years of disparate treatment by the Defendants against Mr. Mirch in an attempt to interfere with his practice of law in the State of Nevada. The action commenced on November 23, 2005 with the filing of a civil complaint, which was later amended on March 23, 2006.  The First Amended Complaint was then served upon the Defendants in late March, 2006, and plead the following causes of action: (1) combination and conspiracy in violation of Section 1 of the Sherman act and Section 4 of the Clayton act; (2) Constitutional violation due process; (3) breach of the covenant of good faith and fair dealing; (4) tortuous interference with business; and (5) injunctive relief.

     On April 19, 2006, Defendants filed two motions to dismiss. (Dock #'s 12 & 13). Mr. Mirch had suffered a stroke on or about April 1, 2006.  In light of Mr. Mirch's serious health condition, a Motion for Extension of Time was filed, seeking 60 days to respond to the two motions.  The Court denied the Plaintiff's request. Plaintiff has filed a writ of mandamus with the Ninth Circuit Court of Appeals challenging the District Court's denial of this extension request.

     Defendants have also filed a Motion for Rule 11 sanctions, claiming that the First Amended Complaint is frivolous and that Mr. Mirch should be sanctioned for filing the same.  The First Amended Complaint is not frivolous, but rather is the product of years of investigation and documentation of the conduct of the defendants as it pertain to wrongful conduct directed toward Mr. Mirch.  For this reason, Defendants motion should be denied.

///

///

## II

## LEGAL ANALYSIS AND ARGUMENT

**a.   Standard for evaluating a complaint for Rule 11 Sanctions**

Rule 11 sanctions may be imposed "if either a) the pleading is filed for an improper purpose, or b) the pleading is frivolous." *Townsend v. Holman Consulting Corp.,* 929 F.2d 1358, 1362 (9th Cir. 1990) (en banc). The standard for determining the propriety of former Rule 11 sanctions is one of objective reasonableness. *Woodrum v. Woodward County*, 866 F.2d 1121, 1127 (9th Cir. 1989). The law of this circuit clearly requires a judge determining whether a pleading is frivolous to look at the entire pleading objectively, and prohibits the imposition of sanctions on the basis of a single frivolous argument or ground for relief. *Golden Eagle*, 801 F.2d at 1540-41; see also, *Steward*, 845 F.2d at 201 (citing *Hudson*, 836 F.2d at 1159). This requirement is a manifestation of the development of distinct requirements for Rule 11 frivolousness and improper purpose "prongs." *See Community Electric Serv. of Los Angeles v. National Electrical Contractors Ass'n,* 869 F.2d 1235, 1243 (9th Cir. 1989) ("frivolous as a whole" analysis is distinct from the "different examination" a court must make to determine whether a pleading has been filed for an improper purpose) ("*Community Electric*"); *Zaldivar*, 780 F.2d at 830-31 (distinguishing between the "two separate problems" addressed by the two "prongs" of Rule 11); *Golden Eagle*, 801 F.2d at 1537-38 (discussing the two separate parts of Rule 11, which impose differing "requirements" on litigants). "Rule 11 permits sanctions [for frivolousness] only where the pleading as a whole is frivolous." *Community Electric*, 869 F.2d at 1242-43.

An attorney is subject to Rule 11 sanctions, among other reasons, when he presents to the court "claims, defenses, and other legal contentions . . . [not] warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law[.]" Fed. R. Civ. P. 11(b)(2). When, as here, a "complaint is the primary focus of Rule 11 proceedings, a district

court must conduct a two-prong inquiry to determine:

   (1) whether the complaint is legally or factually baseless from an objective perspective, and

   (2) if the attorney has conducted a reasonable and competent inquiry before signing and filing it.

*Christian v. Mattel, Inc.*, 286 F.3d 1118, 1127 (9th Cir. 2002) (internal quotations and citation omitted).

As shorthand for this test, the courts use the word "frivolous" "to denote a filing that is both baseless and made without a reasonable and competent inquiry." *Moore v. Keegan Mgmt. Co (In re Keegan Mgmt. Co., Sec. Litig.)*, 78 F.3d 431, 434 (9th Cir. 1996). "Frivolous filings are those that are both baseless and made without a reasonable and competent inquiry." *Buster v. Greisen*, 104 F.3d 1186, 1190 (9th Cir. 1997) (quotation marks omitted).

As demonstrated below, the present complaint overcomes the two-prong test, and therefore Rule 11 sanctions are not available.

**b.**    **The Complaint Is Not Legally or Factually Baseless from an Objective Perspective**

**c.**    **A Reasonable and Competent Inquiry Was Made by Mr. Mirch Before Signing and Filing the Complaint**.

### 1. **The plaintiff's claims against the defendants are not subject to absolute immunity**

In the Motion for Sanctions, the Defendants argue that Mr. Mirch did not do an investigation of the law, claiming the claims are barred by absolute immunity. This is not true. There are many cases pertaining to application qualified immunity, even in the presence of an absolute immunity statute, which is relevant to the present case. Mr. Mirch was counsel on two of the cases decided by the Nevada Supreme Court which established exceptions to immunity in the State of Nevada.

*Clark v. Columbia HCA*, 117 Nev. 468; 25 P.3d 215 (2001), is a Nevada case in which the Nevada Supreme Court reversed the summary judgment of the district court finding that the respondents, members of a hospital peer review board were not entitled to absolute immunity, and the Dr. Clark had overcome the presumption of the review boards' immunity. Mr. Mirch represented Dr. Clark in that action and won the issue of absolute immunity on appeal. The *Clark* case involved the federal Health Care Quality Improvement Act 42 U.S.C. §11112(a) and the issue of immunity in peer review. The issue in *Clark* was absolute immunity under the HCQIA. The Nevada Supreme Court held that members of a peer review board are not immune for the conduct, especially in light of an ill-motive and or judicial bias. Then a qualified immunity applies, which the plaintiff has the burden of overcoming.

*Bank of America Nevada v. Bourdeau*, 115 Nev. 263, 982 P.2d 474 (1999) is another case which addresses exceptions to a privilege. Mr. Mirch represented Mr. Bourdeau. In that case the Nevada Supreme Court held that any statements made to the FDIC investigators were subject to a conditional privilege, unless the privilege is abused:

> However, "[a] qualified or conditional privilege exists where a[*267] defamatory statement is made in good faith on any subject matter in which the person communicating has an interest, or in reference to which he has a right or a duty, if it is made to a person with a corresponding interest or duty." *Circus Circus* 99 Nev. at 62, 657 P.2d at 105 (citations omitted).
> A background investigation[***6] of an employee is subject to

conditional privilege, and any defamatory statements therein are not actionable unless the privilege is abused by publishing the statements with malice. *Pierson v. Robert Griffin Investigations*, 92 Nev. 605, 606, 555 P.2d 843, 843(1976); cf. *Gallues v. Harrah's Club*, 87 Nev. 624, 626-27, 491 P.2d 1276, 1277 (1971).

Whether a particular communication is conditionally privileged by being published on a "privileged occasion" is a question of law for the court; the burden then shifts to the plaintiff to prove to the jury's satisfaction that the defendant abused the privilege by publishing the communication with malice in fact. The question goes to the jury only if there is sufficient evidence for the jury reasonably to infer that the publication was made with malice in fact. *Circus Circus* 99 Nev. at 62, 657 P.2d at 105 (citations and footnote omitted).

*Bourdeau, supra at 266-267.*

### 2. **Only qualified immunity applies to the non-prosecutorial conduct of the defendants.**

The Ninth Circuit Court of Appeals recently addressed the issue of absolute vs. qualified immunity in the case of *Botello v. Gammick*, 2005 U.S. App. LEXIS 12112 (9th Cir. 2005). The *Botello* case was a 42 USC §1983 action by a former police officer against the Washoe County District Attorney. In that action the Court held:

Prosecutors are absolutely immune from liability under @1983 for their conduct insofar as it is "intimately associated" with the judicial phase of the criminal process. See *Burns v. Reed*, 500 U.S. 478, 486, 114 L. Ed. 2d 547, 111 S. Ct. 1934 (1991) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430, 47 L. Ed. 2d 128, 96 S. Ct. 984 (1976)); *Miller v. Gammie,* 335 F.3d 889, 897 (9th Cir. 2003) (en banc) ("To enjoy absolute immunity for a particular action, the official must be performing a duty functionally comparable to one for which officials were rendered immune at common law."). **However, when prosecutors perform administrative or investigative functions, only qualified immunity is available.** See *Buckley v. Fitzsimmons*, 509 U.S. 259, 271-73, 125 L. Ed. 2d 209, 113 S. Ct. 2606 (1993); *Broam v. Bogan*, 320 F.3d 1023, 1028 (9th Cir. 2003). That is, the actions of a prosecutor are not absolutely immune merely because they are performed by a prosecutor. *Buckley*, 509 U.S. at 273.

To determine whether an action is judicial, administrative or investigative, the court looks at "the nature of the function performed, not the identity of the actor who performed it." *Kalina v. Fletcher*, 522 U.S. 118, 127, 139 L. Ed. 2d 471, 118 S. Ct. 502 (1997) (quoting *Forrester v. White*, 484 U.S. 219, 229, 98 L. Ed. 2d 555, 108 S. Ct. 538 (1988)). Thus, whether a prosecutor benefits from absolute or qualified immunity depends on which of the prosecutor's actions are challenged. See *Morley v. Walker*, 175 F.3d 756, 759 (9th Cir. 1999). **The official seeking absolute immunity bears the burden of demonstrating that absolute immunity is justified for the function in question**. *Buckley*, 509 U.S. at 269; *Burns v. Reed*, 500 U.S. 478 at 486 (1991). The

> presumption is that qualified rather than absolute immunity is sufficient to protect government officials in the course of their duties. *Burns*, 500 U.S. at 486-87.
>
> Although the line between the functions is not entirely clear, **it is clear that absolute prosecutorial immunity is justified "only for actions that are connected with the prosecutor's role in judicial proceedings, not for every litigation-inducing conduct**." *Burns*, 500 U.S. at 494. On the one hand, it is well established that a prosecutor[*11] has absolute immunity for the decision to prosecute a particular case, see *Burns*, 500 U.S. at 486, and for the decision not to prosecute a particular case or group of cases, see *Roe*, 109 F.3d at 583. In addition, a prosecutor's professional evaluation of a witness is entitled to absolute immunity "even if that judgment is harsh, unfair or clouded by personal animus." Id. at 584.
>
> On the other hand, it is also well established that an official is not entitled to absolute immunity for conduct involving termination, demotion and treatment of employees. See *Forrester*, 484 U.S. at 228-30 (holding that a judge is not entitled to absolute immunity in his capacity as an employer and therefore may be liable for unconstitutional conduct involving the termination, demotion and treatment of employees); *Meek v. County of Riverside*, 183 F.3d 962, 967 (9th Cir. 1999) (holding that a judge's decision to fire an employee was an administrative decision not entitled to absolute immunity).
> [emphasis added]

*Botello v. Gammick, supra*, at pp 9-10.

In the present case, all of the defendants were sued by Mr. Mirch for conduct that fell outside of the scope of absolute immunity. Qualified immunity is the correct standard to apply.

Rather than look at the nature of the conduct of the defendants and the nature of the conduct alleged (i.e., whether it was intimately associated with the judicial phase versus whether it was administrative or investigative) to determine whether absolute or qualified immunity applies, the Defendants just argue blanket absolute immunity to all of the conduct of the Defendants. This Court, in *Botello v. Gammick, supra*, held that it is improper to apply blanket immunity just by labeling conduct as falling within a particular prosecutorial function. "Because the official seeking absolute immunity bears the burden of demonstrating that absolute immunity is justified for the function in question, see *Buckley, 509 U.S. at 269,* it was the prosecutor's burden to demonstrate that the conduct was tied to an exercise of their

prosecutorial judgment." *Botello v. Gammick, supra at 16.* In this case, the Defendants sweep all conduct under the guise of judicial function in the disciplinary process to afford them absolute immunity. However, as discussed above, the claims relate to other conduct which is not entitled to absolute immunity.

Another case addressing this issue is *Edgar v. Wagner*, 101 Nev. 226; 699 P.2d 110; 1985 LEXIS 401, which correctly applied only *qualified* immunity to investigative and administrative acts engaged in by the prosecutor". Both *Edgar* and *Stevens v. McGimsey*, 99 Nev. 840; 673 P.2d 499 (1983) are based on the view that bad motives can abrogate judicial immunity; *Stevens* relies on a Ninth Circuit decision, *Beard v. Udall*, 648 F.2d 1264 (9th Cir. 1981), for that proposition. This Court has rejected that rule when the functions being performed are judicial or prosecutorial. *Ashelman v. Pope*, 793 F.2d 1072, 1078 (9th Cir. 1986). However, the Court did not address how the ruling applied to non-judicial or prosecutorial conduct, such as investigation, which is not afforded absolute immunity.

Next, the application of *Stivers v. Pierce*, 71 F.3d 732, (9th Cir 1995), is relevant because it holds that if an adjudicator holds a financial interest in the outcome of the case, then there is a violation of due process:

> Among the cases in which the appearance of bias is "too high to be constitutionally tolerable" are those in which the adjudicator has a direct and substantial pecuniary interest in the outcome of the case before him. *Withrow*, 421 U.S at 47. In such cases, the adjudicator's participation constitutes a per se violation of due process - the appearance of partiality in itself renders the proceedings objectionable, without any showing that the adjudicator was actually biased. *Aetna Life*, 475 U.S. 813 at 825, 89 L.Ed. 2d 823, 106 C.Ct. 1580; *Utica Packing Co. v. Block*, 781 F.2d 71, 77-78 (6th Cir. 1986).
> **The Supreme Court has held that a state licensing tribunal violates due process when its members have a direct and substantial competitive interest in the outcome of the proceedings before them**. *Gibson,* 411 U.S. at 578-79. In Gibson, the Court considered the disciplinary proceedings of an optometry company. All the members of the licensing board, however, were self-employed optometrists. 411 U.S. at 571. The district court found that, if the optometry company were forced to shut down, "the individual members of the Boar, along with other private practitioners of optometry, would all heir to this business".
> *Id.* Without requiring any showing that he board's decision was actually influenced by impermissible bias, the Court upheld the district court;'s conclusion that the board members' "substantial pecuniary

interest" in denying his licenses to competitors constituted a per se violation of the plaintiffs' right to due process. *Id. At 579.*

*Stivers v. Pierce*, supra at 742.

The board in *Stivers* was initially subject to qualified immunity, but lost that immunity by not affording Stivers a fair hearing. In this case, the Defendants Beesley, Peck and Christensen all had a financial interest in the outcome of their complaints against Mirch because they were opposing counsel in the cases with Mirch.

**The Eleventh Amendment does not protect Defendants Beesley, Peck and Christiansen**

The Eleventh Amendment applies to actions for money damages against the state and state officials. Such actions are considered to be suits against the state, and thus barred, if "'the state is the real, substantial party in interest.'" *Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 101, 79 L. Ed. 2d 67, 104 S. Ct. 900 (1984). Defendants Beesley, Peck and Christensen are not state officials. The complaint does not allege that these defendants were acting as state officers or employees, or that they were in fact state officers or employees and no such inference can be drawn from the facts of the complaint. They are individuals who are not protected by the Eleventh Amendment.

Beesley and Peck next argue that absolute immunity applies to anyone who files a bar complaint. However, if, after filing a complaint, the complainant comments publicly or outside the grievance process, then the afforded immunity ceases to exist. *Tobkin v. Jarboe, 710 So. 2d 975* (1998 Fla.) In this case, the facts of the complaint allege conduct outside of filing a bar complaint. For example:

> 44. On or about December 23, 1991, Garrett Sutton, Esq., confirmed by sworn affidavit that he had been approached by Bruce Beesley, Esq., an insurance defense attorney with strong personal ties to International Game Technology, the Nevada State Bar Association, and the State of Nevada Northern Nevada Disciplinary Panel, and was encouraged to cause substantial harm to Mr. Mirch's legal career. At the time, Mr. Beesley was counsel for IGT in a case entitled *IGT v. the Gold Club Casino*, CV 91-3641, Second Judicial District Court, State of

Nevada.

45. Mr. Beesley advised Mr. Sutton that IGT would settle with his client, Dr. Stuart Wyckoff, for $60,000, even though it alleged over $200,000.00 was owed by the Gold Club Casino to IGT if he would file a Bar Complaint against Kevin Mirch with the State Bar of Nevada. The Bar Complaint had to be filed before trial began against IGT and caused Mr. Mirch severe emotional stress and/or his ability to practice law in Nevada or any other State.

46. Mr. Sutton declined and advised Mr. Mirch that on December 19, 1991, that he overheard a conversation from between John Cavanaugh, owner of the Gold Dust West, that Mr. Cavanaugh had been told or heard that it was IGT's strategy in the *IGT v. Gold Club Casino Case*, supra, to win by causing Mr. Mirch serious trouble with the Nevada State Bar, Northern Disciplinary Panel, so that he would be unable to litigate or would be so upset that he would be uneffective. The conduct by Bruce Beesley, Bridget Robb Peck, his partner, and the State Bar of Nevada, Northern Nevada Disciplinary Panel, was unethical, civilly actionable, and constituted the crimes of extortion and obstruction of evidence.

...

72. On October 7, 1998, Pete Sullivan, Esq., attorney working for Attorneys Bruce Beesley and Bridget Robb Peck filed an affidavit that admitted that Mr. Mirch was being set up by firms using the Nevada Supreme Court and the State of Nevada Northern Nevada Disciplinary Panel in order to avoid losing cases and to obtain clients.

73. In a case entitled *Green Tree Vendor Services v. Rutherford*, CV97-05589, a letter was attached to an affidavit which advised Green Tree to wait before suing Dr. Rutherford as the Beesley firm was in the process of causing Mr. Mirch to be disbarred:

2-14-96   TT Erick./ this firm is on hold until **Lessee's Atty is suspended or disbarred.** Notorious for Filing Counterclaims, ETC. Disbarment Proceedings going on right now and they should know shortly what happened we will advance 2 mo until this occurs.

8-2-95 Dric cld to discuss ACCT sd debtors Aty is **up for Disbarment-thinks** we should wait 30 days and see what happens — feels that there will be a counter claim against us and prob the law firm sdin past past experience w/this clown. It will cost An arm and leg Defending SD will follow up w/me in 30 days & we can make decision.

7-11-95. RE cl **F/sid kisster (Gordon & Silver)** he cld to adv that they have complaint ready to be filed but till they should let us know that **kevin mirch is a sociopath & will def counter sue us & atty firm and will be seeking punitive Damages SD** they have had dealing S w/him before and he is nuts SD will want to depose me and credit officer and pres of co SD will prob cost quite a bit to defend -SD we would probably prevail but they are concerned about the cost & wanted to make us aware of it. SD will have Eric tough Base w/me when he gets back next wk

[Note: the language is in short form used by the insurance adjuster]

74. This note was accidentally sent to Mr. Mirch.

...

> 261. Beginning at least as early as November 1985, the exact date being unknown to Kevin J. Mirch, and continuing thereafter up to and including the date of the filing of this Complaint, the Defendants have conspired to inhibit trade and competition in violation of §1 of the Sherman Act, 15 U.S.C. 1, by engaging in an unlawful combination and conspiracy to blacklist, use the State Bar of Nevada as a Business Tool to cause harm to Mr. Mirch's business; and cause a boycott of Mr. Mirch's business by terminating repeatedly causing false claims to be filed with the State Bar of Nevada Disciplinary Board, changing the terms and conditions of disciplinary action imposed or to be imposed against Mr. Mirch, thus violating due process afforded Kevin J. Mirch, Esq., by the State Bar of Nevada and Nevada Supreme Court's own rules and regulations.
>
> 262. The Defendants have agreed to prevent the disciplinary process to be used as a business or fraudulent tool to cause "non-compliant" attorneys that participate in illegal or improper conduct which directly affects interstate commerce. "Non-compliant" attorneys and members of the judiciary are those individuals willing to participate in the illegal conduct.

*See Amended Complaint.*

The above allegations do not pertain to bar complaints Defendants filed against Mr. Mirch, but other conduct which is not protected by any statutory absolute immunity.

## CONCLUSION

Mr. Mirch clearly conducted a legal investigation of his claims and determined that the Defendants are not protected by absolute immunity. Wherefore, Plaintiff respectfully requests that Defendants' Motion for Sanctions be denied.

DATED this 4th day of August, 2006.

LAW OFFICE OF MIRCH & MIRCH

By:_____/s/_____

KEVIN J. MIRCH, ESQ.

|   |   |
|---|---|
| 1 | NV SBN: 923 |
| 2 | 320 Flint Street |
| 3 | Reno, NV 89501 |
| 4 | Plaintiff |