AO 72
(Rev. 8/82)

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| KEVIN J. MIRCH, Esq. | Case No.: 3:05-cv-00641-RLH-RAM |
| Plaintiff, | **O R D E R** |
| vs. | (Motion to Dismiss–#12, Motion to Dismiss-#13, Motion for Sanctions-#17) |
| BRUCE BEESLEY, ROB BARE, BRIDGETT ROBB PECK, DONALD CHRISTENSEN, STATE BAR OF NEVADA, DOES I-X, A-Z CORPORATIONS. | |
| Defendants. | |

Before the Court is Defendant State Bar of Nevada's ("State Bar") **Motion to Dismiss** (#12), filed April 19, 2006. Also before the Court is Defendants Bruce Beesley ("Beesley"), Bridget Robb Peck ("Peck"), Rob Bare ("Bare"), and Don Christensen's ("Christensen") ("individual Defendants") **Motion to Dismiss Plaintiff's First Amended Complaint** (#13), filed April 19, 2006. The Court has also considered Plaintiff's Opposition (#46), filed October 9, 2006, and Defendants' joint Reply (#47), filed October 23, 2006.

Also before the Court is Defendants Beesley, Peck, and Christensen's **Motion for Sanctions** (#17), filed May 19, 2006. The Court has also considered Plaintiff's Opposition (#33), filed August 4, 2006, and Defendants' Reply (#35), filed August 14, 2006.

1

**BACKGROUND**

Plaintiff, appearing pro per, is an attorney licensed to practice law in the State of Nevada. On September 26, 2002, Plaintiff filed a first amended complaint in the Second Judicial District Court, Washoe County, Nevada, in the case styled *Kevin J. Mirch, Doe Plaintiffs A-Z v. McDonald, Carano & Wilson, LLP, Leigh Goddard, Esq., and Doe Attorneys 1-10*, CV02-05644. In that matter, Plaintiff brought three claims for relief against the defendants, whom allegedly interfered with Plaintiff's representation of former clients. On October 9, 2003, Judge James Hardesty entered an order dismissing the case, imposing Rule 11 sanctions, and referring the matter to the State Bar for disciplinary investigation. After an investigation, the State Bar filed a formal complaint against Plaintiff on June 14, 2004. The hearing was continued until December 7, 2006.

In relation to the pending disciplinary proceeding, Plaintiff filed an amended complaint in this Court against the State Bar, Beesley, Peck, Bare, and Christensen (collectively "Defendants") on March 23, 2006, alleging that Defendants conspired to destroy his law practice and legal reputation dating from 1985 to the present. He alleged that his success in litigating important political and business issues, in which he disclosed corruption in the legal system, caused Defendants to devise a scheme to cause harm to his reputation, practice, and legal license. Defendants allegedly carried out this scheme by using the State Bar as a litigation tool to threaten Plaintiff with criminal action, bar action, and disbarment if he litigated matters that were political, had "preferred attorney adversaries," or involved substantial clients.

As further evidence of Defendants' alleged scheme, Plaintiff alleges that the State Bar reviewed and prosecuted more than a dozen frivolous complaints filed against him, some of which were written or encouraged by Defendants Beesley and Peck, whom Plaintiff alleges are law partners and "preferred attorneys" with strong connections with the State Bar. According to Plaintiff, Defendant Bare, bar counsel to the State Bar, was aware that Beesley and Peck used the disciplinary process to obstruct justice, yet Bare failed to take any action to correct the misconduct allegedly targeted at Plaintiff. Plaintiff also names Christensen as a Defendant, an attorney

employed by the Reno City Attorney's Office, for having a conflict of interest, which allegedly prevented Christensen's involvement in the pending disciplinary matter.

In his amended complaint, Plaintiff brings the following five claims for relief: (1) combination and conspiracy to violate the antitrust laws against all Defendants, (2) violation of his constitutional due process rights, (3) breach of the covenant of good faith and fair dealing, (4) tortious interference with business against all Defendants, and (5) injunctive relief against the State Bar and Bare. Defendants contend that Plaintiff brought this suit to interfere with the disciplinary proceeding pending against him. Thus, in separately filed motions, the State Bar now moves to dismiss Plaintiff's complaint pursuant to Federal Rules of Civil Procedure ("FRCP") 12(b)(1) for lack of subject matter jurisdiction, and the individual Defendants move to dismiss pursuant to FRCP 12(b)(1) and 12(b)(6) for failure to state a claim upon which relief can be granted.

**DISCUSSION**

**I. Motions to Dismiss**

    **A. Motion to Dismiss for Lack of Subject Matter Jurisdiction**

Pursuant to FRCP 12(b)(1), a party may bring a defense by motion asserting that the court lacks "jurisdiction over the subject matter." The non-moving party seeking to invoke the jurisdiction of the federal court bears the burden of establishing the court's subject matter jurisdiction. *See Stock West, Inc. v. Confederated Tribes of the Colville Reservation*, 873 F.2d 1221, 1225 (9th Cir. 1989). In reviewing a Rule 12(b)(1) motion, the court is not "restricted to the face of the pleadings, but may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction." *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988).

        **1. Eleventh Amendment Immunity**

As an initial matter, the Court considers the State Bar's argument that this Court lacks subject matter jurisdiction over it because it is an arm of the State immune from Plaintiff's suit by the Eleventh Amendment.

1   The Eleventh Amendment provides that "[t]he Judicial power of the United States
2   shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one
3   of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."
4   U.S. Const. amend. XI.   Though not explicitly stated, the Eleventh Amendment's prohibition has
5   been construed to extend to suits brought against a state by its own citizens. *Papasan v. Allain*, 478
6   U.S. 265, 276 (1986).  Under the Eleventh Amendment, citizens are barred from bringing suits
7   seeking either damages or injunctive relief "against a state, an 'arm of the state,' its
8   instrumentalities, or its agencies" in federal court, *Franceschi v. Schwartz*, 57 F.3d 828, 831 (9th
9   Cir. 1991) (citation omitted), unless the state waives its immunity or Congress unequivocally
10  expresses its intent to abrogate the state's immunity. *Broughton Lumber Co. v. Columbia River
11  Gorge Comm'n*, 975 F.2d 616, 619 (9th Cir. 1992).
12  Applying those principles here, the Court finds that the State Bar is entitled to
13  Eleventh Amendment immunity based on the State Bar's status as an arm of the State. *Ginter v.
14  State Bar of Nevada*, 625 F.2d 829, 830 (9th Cir. 1980) (finding that "the Nevada State Bar
15  Association, as an arm of the State, is not subject to suit under the Eleventh Amendment");
16  *O'Connor v. State of Nevada*, 507 F.Supp. 546, 550 (D. Nev. 1981), *aff'd*, 686 F.2d 749 (9th Cir.
17  1982) (finding the State Bar of Nevada, as an arm of the State, immune from suit under the
18  Eleventh Amendment).  In reaching this decision, the Court also relied on the State of Nevada's
19  decision to explicitly decline to waive its immunity from suit under the Eleventh Amendment, Nev.
20  Rev. Stat. § 41.031(3), and the fact that Congress has not clearly abrogated the State's immunity
21  with respect to § 1983 cases, *Quern v. Jordan*, 440 U.S. 332, 342 (1979) or pendant state law
22  claims, *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100-21 (1984).
23  Aside from this finding, however, Plaintiff argues that the State Bar's shield of
24  Eleventh Amendment immunity does not always apply because Nevada Supreme Court Rule
25  ("Nev. Sup. Ct. R.") 76(1) expressly states that the State Bar "may sue and be sued." This argument
26  is without merit for several reasons.  First, Plaintiff fails to explain why in this instance the State

1   Bar's immunity is not applicable.  Second, the rule providing that the State Bar "may sue and be
2   sued" has had no effect in other federal cases finding the State Bar immune from suit under the
3   Eleventh Amendment.  *See, e.g.*, *Ginter v. State Bar of Nevada*, 625 F.2d 829 (9th Cir. 1980);
4   *O'Connor v. State of Nevada*, 507 F. Supp. 546 (D. Nev. 1981).  Third, it appears that the rule
5   permits the State Bar to sue or be sued in state courts, but does not impact the State Bar's Eleventh
6   Amendment immunity in federal courts.  *See, e.g., Petty v. Tennessee-Missouri Bridge Comm'n*,
7   359 U.S. 275, 276-77 (1959) (stating that "where a public instrumentality is created with the right
8   'to sue and be sued' that waiver of immunity in the particular setting may be restricted to suits or
9   proceedings of a special character in the state, not the federal, courts.")
10          For the reasons discussed, the Court grants the State Bar's motion to dismiss for
11  lack of subject matter jurisdiction and concludes that Plaintiff's federal and state claims (second,
12  third, fourth, and fifth claims for relief) against the State Bar are barred by the Eleventh
13  Amendment.
14                              **2. Antitrust Claims**
15          In his second claim for relief, Plaintiff alleges that Defendants violated §§ 1 and 2 of
16  the Sherman Anti-Trust Act ("Sherman Act"), 15 U.S.C. §§ 1, 2, and seeks relief under §§ 4 and
17  16 of the Clayton Act.  The gravamen of Plaintiff's antitrust allegations appear to be that the
18  individual Defendants conspired with the State Bar to restrain Plaintiff from providing quality legal
19  representation to the public.  The Defendants have carried out this conspiracy by allegedly allowing
20  the State Bar to be used as a business tool to cause harm to Plaintiff's business, causing a boycott
21  of Plaintiff's business due to the filing of false claims against Plaintiff with the State Bar, and
22  changing the terms and conditions of disciplinary action imposed or to be imposed against Plaintiff.
23  Defendants move to dismiss these claims on the grounds that they are exempt from antitrust
24  liability under the state action exemption doctrine announced in *Parker v. Brown*, 317 U.S. 341
25  (1943).
26  / / / /

AO 72
(Rev. 8/82)

The purpose of the Sherman Act is to "suppress combinations to restrain competition and attempts to monopolize by individuals and corporations." *Parker v. Brown*, 317 U.S. 341, 351 (1943). Consistent with that purpose, § 1 of the Sherman Act makes unlawful "[e]very contract, combination . . . or conspiracy, in restraint of trade or commerce among the several States." 15 U.S.C. § 1. Section 2 of the Sherman Act, makes it unlawful to "monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States." 15 U.S.C. § 2. Private parties injured by violations of these sections may sue under § 4 of the Clayton Act, 15 U.S.C. § 15, for treble damages and costs of suit, including attorney's fees, and also under § 16 of the Clayton Act, 15 U.S.C. § 26, for injunctive relief.

While noting the Sherman Act's purpose, the Supreme Court in *Parker v. Brown*, 317 U.S. 341 (1943), found nothing in the language of the Sherman Act or in its history to suggest that "its purpose was to restrain a state or its officers or agents from activities directed by its legislatures." *Id.* at 350-51. This holding has come to be known as the "state action" exemption doctrine to the Sherman Act. Under this doctrine, any anti-competitive action which qualifies as "state action" is not subject to the prohibitions of the Sherman Act. For example, in *Goldfarb v. Virginia State Bar*, the Supreme Court held that the state action exemption doctrine was inapplicable to price fixing activities of the state and county bar associations when the anticompetitive activities were not "compelled by direction of the State acting as a sovereign." 421 U.S. 773, 791 (1975).

A few years later, the Supreme Court distinguished *Goldfarb* from *Bates v. State Bar of Arizona*, whereby it held that the challenged restraint, a disciplinary rule barring attorney advertising, was an "affirmative command of the Arizona Supreme Court under its Rules. . . ." 433 U.S. 350, 360 (1977). After noting that the Arizona Supreme Court was "the ultimate body wielding the State's power over the practice of law," the Supreme Court found that "the restraint [was] 'compelled by direction of the State acting as a sovereign,'" and as such was exempt from

the Sherman Act. *Id* (quoting *Goldfarb*, 421 U.S. at 791).

*i. Defendant State Bar*

Here, unlike *Bates* or *Goldfarb*, Plaintiff challenges the Defendants' alleged improper usage of the State Bar as a litigation tool to file or threaten to file frivolous complaints or grievances against him to protect "preferred attorneys" and to prevent him from representing deserving members of the public.

To address Plaintiff's claim, the Court begins by noting that the Supreme Court of Nevada is part of the judicial branch of the State of Nevada, and is created by Article 6 of the Nevada Constitution. *O'Connor v. State of Nevada*, 507 F. Supp. 546, 550 (D. Nev. 1981). With its authority, the Supreme Court of Nevada created the State Bar to investigate and discipline legal professionals in Nevada. Nev. Sup. Ct. R. 76, et seq. The State Bar, among other responsibilities, carries out the Nevada Supreme Court rules relating to the filing of grievances and complaints. Relevant to the instant litigation is Nev. Sup. Ct. R. 104(1)(a), which states that the State Bar counsel shall "[i]nvestigate all matters involving possible attorney misconduct or incapacity called to bar counsel's attention, whether by grievance or otherwise." After an investigation, the State Bar counsel "shall recommend in writing dismissal, . . . or the filing of a written complaint with the appropriate disciplinary board for formal hearing." Nev. Sup. Ct. R. 105(1)(a).

Applying Nev. Sup. Ct. R. 104(1)(a) and 105(1)(a) here, the Court finds that the challenged activity, that is the filing of complaints or grievances against Plaintiff, was properly carried out by the State Bar. Even taking the facts in the light most favorable to Plaintiff, the Court finds that regardless of whether frivolous complaints or grievances were filed, the State Bar is charged with the responsibility of investigating such complaints or grievances to determine if the attorney's conduct is subject to discipline. This conduct is authorized by the Supreme Court of Nevada, an arm of the State, and therefore compelled by direction of the State acting as a sovereign. For that reason, the State Bar is exempt from Plaintiff's Sherman Act claim, and consequently, Plaintiff's claim for remedies under the Clayton Act fails. *See State of New Mexico*

7

*v. American Petrofina, Inc.*, 501 F.2d 363, 372 n.19 (9th Cir. 1974) (finding that since "states are not regulated by sections 1 and 2 of the Sherman Act, [the court] need not consider whether sections 4 and 16 of the Clayton Act afford [the counterclaimant] the remedies it seeks.")

*ii. Individual Defendants*

The individual Defendants move to dismiss Plaintiff's antitrust claims on the ground that they are exempt under the state action exemption doctrine because, as employees and participants in the disciplinary process, they are state actors. Plaintiff, however, argues that the individual Defendants' conduct went outside the scope of the disciplinary process, thereby dissipating any immunity that may have applied.

The state action exemption doctrine is not limited to governmental agencies alone but extends as well to officers or agents of the State. *See Parker v. Brown*, 317 U.S. 341, 350-51 (1943); *see also Saenz v. Univ. Interscholastic League*, 487 F.2d 1026, 1028 (5th Cir. 1973). Because the State Bar is an arm of the state exempt from Plaintiff's antitrust claims, the Court will determine below whether the individual Defendants are officers or agents of the State Bar also exempt from Plaintiff's antitrust claims.

*a. Bare and Christensen*

In bringing his anti-trust claims against Bare, Plaintiff appears to allege that Bare, as bar counsel to the State Bar, was aware that Beesley and Peck used the disciplinary process to obstruct justice, that Bare failed to prosecute conduct that constituted an obstruction of justice, and despite the filing of false complaints against Plaintiff, Bare failed to initiate any action.

As bar counsel, Bare is responsible for investigating all matters involving possible attorney misconduct. Nev. Sup. Ct. R. 104(1)(a). At the conclusion of his investigation, Bare must recommend in writing whether to dismiss or file a formal complaint. Nev. Sup. Ct. R. 104(1)(b). Bare's recommendation is then reviewed by a screening panel, which determines whether to approve, reject, or modify his recommendation. Nev. Sup. Ct. R. 105(1). Bare is also responsible for prosecuting all proceedings under the Nevada Supreme Court rules before all forums in the

name of the State Bar of Nevada. Nev. Sup. Ct. R. 104(1)(c).

In light of Bare's official duties and Plaintiff's allegations, the Court finds that Bare's conduct is exempt from Plaintiff's antitrust claims. It is clear from Plaintiff's allegations, taken in the light most favorable to him, that Bare undertook the alleged actions in his role as bar counsel. First, Plaintiff conclusively asserts that Bare failed to prosecute actions that constituted an obstruction of justice or failed to initiate any action despite the filing of false complaints. Both of these allegations fail to take into account the fact that Bare is not the sole decision-maker in prosecuting attorney misconduct. Bare simply investigates and recommends the type of action that should be taken, while the screening panel ultimately determines whether it agrees or disagrees with Bare's recommendation. Second, Plaintiff contends that Bare was aware that Beesley and Peck used the disciplinary process to obstruct justice. Even if Bare was aware of such conduct, Plaintiff still fails to overcome the fact that the decision to initiate disciplinary action does not rest with Bare alone.

Next, Plaintiff alleges that Christensen, an attorney employed by the Reno City Attorney's Office, had a conflict of interest that prevented his involvement in the pending disciplinary hearing. Although Plaintiff fails to clearly indicate Christensen's status or position with the State Bar, Plaintiff's opposition to the instant motion states that Christensen was part of the State Bar's disciplinary process that determined that a formal grievance should proceed further. Therefore, the Court presumes that Christensen is a member of the State Bar's disciplinary board.

In that position, Christensen is charged with the responsibility of conducting hearings on formal complaints of misconduct. Nev. Sup. Ct. R. 103(7)(a). In accordance with this responsibility, Christensen was allegedly a part of the disciplinary process that determined that a formal grievance should proceed against Plaintiff. Plaintiff alleges that Christensen should not have been a part of this process because he was once involved in a legal matter with Plaintiff, thereby presenting a conflict of interest. Against this backdrop, it is clear that Plaintiff's allegations relate to Christensen's conduct as an agent of the State Bar, thereby making Christensen exempt

from Plaintiff's antitrust claims.

### b. Beesley and Peck

As for his antitrust claims against Beesley and Peck, Plaintiff essentially alleges that Beesley and Peck filed frivolous complaints against him and acted outside the scope of the disciplinary process by advertising their ability to influence the State Bar to impact Plaintiff's cases. In light of these allegations, the Court begins by noting that neither Beesley nor Peck are officials or agents of the State Bar, but are private attorneys. To defeat Plaintiff's claim against them, the individual Defendants argue that Beesley and Peck are entitled to absolute quasi-judicial immunity. They rely on Nev. Sup.Ct. R. 106(1), which states that "[a]ll participants in the discipline process, including grievants, bar counsel staff, members of the disciplinary panels . . . shall be absolutely immune from civil liability. No action may be predicated upon the filing of a disciplinary complaint or grievance or any action taken in connection with such a filing by any of the participants." By applying this rule here, it is clear that Beesley and Peck as grievants used the disciplinary process to file complaints or grievances against Plaintiff. Those actions are protected by Nev. Sup. Ct. R. 106(1), and as a result, they are immune from Plaintiff's claim to that extent.

However, it is their alleged conduct that occurred outside of the disciplinary process that potentially negates absolute immunity. As to Beesley's conduct, Plaintiff alleges that Beesley approached and encouraged an attorney to cause substantial harm to Plaintiff's legal career, that Beesley advised this same attorney that he would settle a case if the attorney would file a bar complaint against Plaintiff, and on another occasion Beesley allegedly arranged for Plaintiff's discipline and bragged about it to an insurance company in order to obtain the client's business. (Compl. ¶¶ 44-45, 71.) As to Peck's conduct, the only specific allegation Plaintiff makes is that Peck and Beesley either encouraged or wrote nearly one dozen bar complaints against Plaintiff. (Compl. ¶ 96.) Neither Beesley nor Peck's conduct in this instance relates to their filing of disciplinary complaints or grievances, and thus, is not protected by Nev. Sup. Ct. R. 106(1). Therefore, the Court will consider, *infra* B.1., whether Plaintiff has stated a claim upon which

relief can be granted against Beesley and Peck.

Based on the foregoing analysis, the Court concludes that Defendants State Bar, Bare, and Christensen are exempt from Plaintiff's antitrust claims. The antitrust claims against Defendants Beesley and Peck are also dismissed pursuant to Nev. Sup. Ct. R. 106(1) to the extent that they used the disciplinary process to file grievances against Plaintiff. Plaintiff's claim for remedies under the Clayton Act is also dismissed because there is no violation of the Sherman Act.

### B. Motion to Dismiss for Failure to State a Claim

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). All factual allegations set forth in the complaint "are taken as true and construed in the light most favorable to [p]laintiffs." *Epstein v. Washington Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996). Dismissal is appropriate "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

#### 1. Antitrust Claims against Beesley and Peck for Conduct Outside the Disciplinary Process

Even if Plaintiff's antitrust claims are not barred by absolute immunity, the individual Defendants argue that Plaintiff has failed to state his antitrust claims with the requisite particularity. However, contrary to their argument, "[t]here is no special rule requiring more factual specificity in antitrust pleadings" than is required under FRCP 8(a). *Datagate, Inc. v. Hewlett-Packard Co.*, 941 F.2d 864, 870 (9th Cir. 1991); *see also* Fed.R.Civ.P. 8(a)(2) (requiring a short and plain statement of the claim showing that the pleader is entitled to relief). To meet the general pleading requirements of FRCP 8, Plaintiff need only give Defendants fair notice of what the claims are and the grounds upon which they rest. *See Datagate, Inc*, 941 F.2d at 870.

11

1    To address this claim, the Court notes that the State Bar, Bare, and Christensen are exempt as Defendants and that Beesley and Peck are the remaining Defendants under this claim. Therefore, to establish a claim against Beesley and Peck under § 1 of the Sherman Act, Plaintiff must show "(1) that there was a contract, combination, or conspiracy, i.e., an agreement or concerted action toward 'a common goal,' (2) that the agreement "unreasonably" restrains trade, under either a per se rule of illegality or a rule of reason analysis, and (3) that the restraint affected interstate commerce." *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n.*, 809 F.2d 626, 632-33 (9th Cir. 1987)(citations omitted). To properly allege a conspiracy to monopolize in violation of § 2 of the Sherman Act, Plaintiff must establish: "(1) the existence of a combination or conspiracy to monopolize; (2) an overt act in furtherance of the conspiracy; (3) the specific intent to monopolize; and (4) causal antitrust injury." *Paladin Assocs., v. Montana Power Co.*, 328 F.3d 1145, 1158 (9th Cir. 2003). Thus, under either section, Plaintiff must show that Beesley and Peck acted in concert with one another to affect interstate commerce.

In this case, Plaintiff alleges that Beesley and Peck engaged in a combination and conspiracy to restrain competition in the area of business litigation and engaged in a conspiracy to monopolize or attempt to monopolize the legal business. In his complaint, Plaintiff alleges specific occasions in which Beesley and Peck used the disciplinary process to obstruct justice. However, none of these allegations meet the essential element of his claims, which is that an agreement existed between Beesley and Peck to unreasonably restrain competition or monopolize the legal field. The fact that Beesley and Peck may have filed frivolous grievances against Plaintiff or even incited others to do so does not suggest that an agreement existed between them to prevent Plaintiff from practicing law.

Even if Beesley and Peck did enter an agreement, Plaintiff fails to indicate how the agreement unreasonably restrained trade and that the restraint affected interstate commerce. Plaintiff's complaint is also devoid of facts showing that Beesley and Peck had a specific intent to monopolize the legal arena. In the absence of such, Plaintiff fails to state a claim upon which relief

AO 72
(Rev. 8/82)

1  can be granted for Beesley and Peck's conduct that allegedly occurred outside the disciplinary
2  process. Because Plaintiff fails to assert a Sherman Act claim, his claim for remedies under the
3  Clayton Act also fails.

**2. Due Process Claim and Injunctive Relief Claim**

Plaintiff's second claim for relief alleges that Defendants violated his constitutional due process rights in disciplinary matters against him before the State Bar. In his fifth claim for relief, Plaintiff seeks injunctive relief against the State Bar and Bare to enjoin the pending disciplinary proceeding against him. Because the Court has already found that the State Bar is immune, the Court need not address these claims as it applies to the State Bar. As for the individual Defendants, they argue that the *Younger* abstention doctrine precludes this Court from addressing Plaintiff's claims.

*i. Younger Abstention Doctrine*

*Younger v. Harris*, 401 U.S. 37 (1971), and its progeny established the general principle that federal courts should, absent extraordinary circumstances, abstain from "granting injunctive or declaratory relief that would interfere with pending state judicial proceedings." *Hirsh v. Justices of Supreme Court of State of Cal.*, 67 F.3d 708, 712 (9th Cir. 1995); *see also Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432-37 (1982) (applying *Younger* abstention doctrine to state bar disciplinary proceeding). In the absence of extraordinary circumstances, abstention is required if the state proceedings: "(1) are ongoing, (2) implicate important state interests, and (3) provide the plaintiff an adequate opportunity to litigate federal claims." *Hirsh*, 67 F.3d at 712.

Beginning with the first element, the Court finds that the disciplinary proceeding here constitutes an ongoing state judicial proceeding. *See Middlesex*, 457 U.S. at 432. First, it is clear that at the time Plaintiff initiated this suit, he faced an ongoing disciplinary proceeding. Second, the disciplinary process is judicial in nature. It is initiated by the filing of a grievance, which is investigated by bar counsel who may later recommend dismissal or the filing of a written

AO 72
(Rev. 8/82)

1  complaint. Nev. Sup. Ct. R. 104(a), 105(1)(a). Bar counsel's recommendation is reviewed by a
2  screening panel that must decide to approve, reject, or modify the recommendation. Nev. Sup. Ct.
3  R. 105(1)(a). Whatever decision is reached by the review panel, bar counsel is responsible for
4  notifying the respondent thereof. In response, the respondent may file written objections and a
5  statement electing either a formal or informal hearing. Nev. Sup. Ct. R. 105(1)(b). This indicates
6  the judicial character of the disciplinary process. *See, e.g.,* Nev. Sup. Ct. R. 105(c) and 105(2)(c).
7         As for the second element, the Court finds that the disciplinary proceedings
8  implicate important state interests, specifically the State's interest in regulating the conduct of the
9  attorneys it licenses. *See Hirsh*, 67 F.3d at 712-13 (citing *Middlesex*, 457 U.S. at 434); *see also,*
10 *e.g., Michel v. Bare*, 230 F. Supp. 2d 1147, 1159-60 (D. Nev. 2002) (stating that "[t]he State Bar of
11 Nevada and the Nevada Supreme Court have a substantial and legitimate interest in prohibiting the
12 unauthorized practice of law as well as a legitimate interest in promoting attorney accountability. . .
13 .")
14         Regarding the third element, so long as the constitutional claims of Plaintiff can be
15 determined in the State disciplinary proceeding and there is no showing of bad faith, harassment, or
16 some other extraordinary circumstances, the third factor is met and this Court should abstain. *See*
17 *Middlesex*, 457 U.S. at 435. In his due process claim, Plaintiff seeks actual and punitive damages,
18 and presumably injunctive relief as detailed in his fifth claim for relief. To the extent that
19 injunctive relief is sought, Plaintiff mainly alleges that his due process rights have been violated
20 because Defendants have failed to conduct the pending disciplinary proceeding according to the
21 rules and procedures outlined by the State Bar. Consequently, Plaintiff requests the Court to enjoin
22 the pending disciplinary proceeding until proper discovery takes place and the Nevada
23 Supreme Court can hear the matter.
24         To meet the third element, a plaintiff bears the burden of demonstrating that his
25 constitutional claim cannot be litigated in the pending disciplinary proceeding. *See Pennzoil Co. v.*
26 *Texaco, Inc.*, 481 U.S. 1, 14 (1987) (finding that a federal plaintiff bears burden of showing "'that

AO 72
(Rev. 8/82)

1  state procedural law barred presentation of [its] claims'") (quoting *Moore v. Sims*, 442 U.S. 415,
2  432 (1979)).  Therefore, "when a litigant has not attempted to present his federal claims in related
3  state-court proceedings, a federal court should assume that state procedures will afford an adequate
4  remedy, in the absence of unambiguous authority to the contrary." *Pennzoil Co.,* 481 U.S. at 15.
5  Here, Plaintiff argues that the *Younger* abstention doctrine does not preclude his lawsuit because
6  his claims will not be vindicated by the bar disciplinary proceedings.  This conclusive assertion
7  fails to demonstrate that Plaintiff is prevented from litigating his constitutional claim in the pending
8  disciplinary proceeding.  Thus, the Court concludes that Plaintiff's constitutional claim can be
9  addressed in the pending disciplinary proceeding.
10          Since all three elements of the *Younger* abstention doctrine are met and Plaintiff has
11 alleged no extraordinary circumstances preventing *Younger's* application, the Court dismisses
12 Plaintiff's second and fifth claim for relief on abstention grounds.
13                  *ii. Due Process Claim for Damages*
14          In addition to injunctive relief, Plaintiff also seeks actual and punitive damages
15 under his due process claim.  Plaintiff does not indicate the grounds upon which he brings this
16 claim; however, the Court presumes it is brought pursuant to 42 U.S.C. § 1983 as Plaintiff's alleges
17 it as a basis for the Court's jurisdiction.  A claim under 42 U.S.C. § 1983 prohibits persons acting
18 under "color of" state law from depriving any person of any rights, privileges or immunities
19 secured by the Constitution or federal law.  To the extent that Plaintiff seeks damages against all of
20 the Defendants for his due process claim, the Court finds that the State Bar, Bare, and Christensen
21 are entitled to Eleventh Amendment immunity.  *See O'Connor v. State of Nevada*, 507 F. Supp
22 546, 550 (D. Nev. 1981) (holding that the state bar association, as an agency of the state, is not a
23 "person" subject to § 1983 actions); *see also Will v. Michigan Dept. of State Police*, 491 U.S. 58,
24 71 (1989) (finding that state officials acting in their official capacities are not "persons" subject to
25 suit under § 1983).
26 / / / /

AO 72
(Rev. 8/82)

As for Beesley and Peck, whom are not state actors, Plaintiff must have alleged that they conspired with the State Bar, Bare, or Christensen to violate Plaintiff's constitutional rights in order to subject them to liability under § 1983. *See Franklin v. Fox*, 312 F.3d 423, 441 (9th Cir. 2002) (finding that a private individual may be liable under § 1983 if she conspired or entered joint action with a state actor.) Plaintiff does not allege that Beesley and Peck conspired with either the State Bar, Bare, or Christensen to violate his due process rights. In fact, Plaintiff does not even mention Beesley or Peck by name in his due process claim. Based on the reasons stated, the Court dismisses Plaintiff's § 1983 claim against Beesley and Peck.

Accordingly, the Court dismisses Plaintiff's second claim for relief for damages for failure to state a claim upon which relief can be granted.

**3. State Tort Claims**

Plaintiff's third and fourth claims for relief assert state law claims of (1) tortuous interference with business, and (2) breach of covenant of good faith and fair dealing against Defendants. The individual Defendants contend that the third and fourth claims should be dismissed because those claims are also barred by the Eleventh Amendment.

These claims are rightfully dismissed against the State Bar, Bare, and Christensen as they are entitled to Eleventh Amendment immunity. With respect to Peck and Beesley, as already stated, they are not entitled to Eleventh Amendment immunity. However, Plaintiff's complaint fails to allege any facts indicating how, if at all, Peck or Beesley are liable under the third and fourth causes of action. Plaintiff's third and fourth causes of action simply allege improper conduct by individuals not named as Defendants.

Although the individual Defendants make additional arguments for dismissing Plaintiff's state law claims, the Court declines to address those arguments as they were not raised until Defendants filed their Reply brief. *See United States v. Bohn*, 956 F.2d 208, 209 (9th Cir. 1992 ) (noting that courts generally decline to consider arguments raised for the first time in a reply brief.)) Thus, on the basis asserted above, Plaintiff's third and fourth claims for relief

are dismissed as they fail to state a claim for which relief can be granted.

**II. Motion for Rule 11 Sanctions**

Defendants Beesley, Peck, and Christensen move for an award of sanctions against Plaintiff on the grounds that Plaintiff's complaint is baseless and was made without a reasonable and competent inquiry in violation of FRCP 11. Defendants further move for compensation for having been required to respond to Plaintiff's frivolous complaint.

Under Rule 11, an attorney or unrepresented party, "[b]y presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper . . . is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,- -

> (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
> (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;
> (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery[.]

Fed. R. Civ. P. 11(b). When an attorney or party violates this Rule, the court "may . . . impose an appropriate sanction." Fed. R. Civ. P. 11(c). Before doing so, the court must conduct the following two-prong inquiry: "(1) whether the complaint is legally or factually 'baseless' from an objective perspective, and (2) if the attorney has conducted 'a reasonable and competent inquiry' before signing and filing it." *Christian v. Mattel, Inc.,* 286 F.3d 1118, 1127 (9th Cir. 2002) (citation omitted). "As shorthand for this test, the [Ninth Circuit] use the word 'frivolous' 'to denote a filing that is *both* baseless *and* made without a reasonable and competent inquiry.'" *Holgate v. Baldwin*, 425 F.3d 671, 676 (9th Cir. 2005) (quoting *Moore v. Keegan Mgmt. Co.,* 78 F.3d 431, 434 (9th Cir. 1996).

To counter the instant motion, Plaintiff argues that his complaint is not frivolous and is the product of years of investigation and documentation of Defendants' wrongful conduct.

17

1  Plaintiff further contends that he conducted a legal investigation into the claims and determined
2  that Defendants' conduct is not entitled to absolute immunity, that only a qualified immunity
3  applies to non-prosecutorial conduct of the Defendants, and that the Eleventh Amendment does not
4  protect Defendants.

5        Based on an objective review of the complaint, the Court finds that Plaintiff's
6  complaint is legally baseless.  The Court further finds that Plaintiff has failed to conduct a
7  reasonable and competent inquiry before filing his complaint.  This conclusion is based on the
8  following.  First, the claims against Christensen are barred by the Eleventh Amendment and the
9  state action exemption doctrine.  If Plaintiff conducted even a cursory review of the law relating to
10 Eleventh Amendment immunity and state action exemption, Plaintiff would have known that
11 Christensen, as a member of the State Bar's disciplinary board, is a state official entitled to
12 immunity and exemption.  Second, the claims against Beesley and Peck lack factual and legal
13 support.  It appears to the Court that Plaintiff brought his first, second, third, and fourth claims for
14 relief against Beesley and Peck.  In his first claim, Plaintiff failed to allege a combination or
15 conspiracy between Beesley and Peck.  And, in his second, third, and fourth claim for relief,
16 Plaintiff failed to even allege improper conduct by Beesley and Peck that violated the stated claim
17 for relief.

18       Although the instant motion is brought by Beesley, Peck, and Christensen, the Court
19 notes that in reviewing the complaint in its entirety, Plaintiff generally failed to conduct a
20 reasonable and competent inquiry into his complaint before signing and filing it.  Among other
21 things, the complaint is excessive, there are a total of sixty (60) pages and 400 paragraphs dating
22 activity that occurred from 1985 to the present.  And most of all, the complaint is incoherent.  To
23 avoid pointing out the many problems with Plaintiff's complaint, the Court notes that it appears
24 Plaintiff filed his complaint for the mere purpose of delaying the pending disciplinary proceedings.

25       For the reasons discussed, the Court finds that issuing sanctions in the form of
26 attorneys' fees is an appropriate remedy.  Because Defendants Beesley, Peck, and Christensen have

AO 72
(Rev. 8/82)

failed to indicate a reasonable amount of attorneys' fees, the Court is unable at this point to enter an appropriate amount. Therefore, the Court directs Defendants Beesley, Peck, and Christensen to submit evidence of reasonable attorneys' fees.

## CONCLUSION

Accordingly, and for good cause appearing,

IT IS HEREBY ORDERED that Defendant State Bar's Motion to Dismiss (#12) is GRANTED.

IT IS FURTHER ORDERED that Defendants Beesley, Peck, Bare, and Christensen's Motion to Dismiss Plaintiff's Amended Complaint (#13) is GRANTED.

IT IS FURTHER ORDERED that Defendants' Motion for Sanctions (#17) is GRANTED to the extent that Defendants Beesley, Peck, and Christensen submit evidence of reasonable attorneys' fees within two weeks from the date of this Order. Plaintiff, thereafter, has one week to file an Opposition thereto, if any. Defendants Beesley, Peck, and Christensen are then given three days to file a Reply, if any.

Dated: January 9, 2007.

_____
ROGER L. HUNT
United States District Judge